# EXHIBIT A

**COHEN KOLODNY ABUSE ANALYTICS, LLC**
By: Elliot Kolodny, Esquire
Identification Number: 54270
301 Oxford Valley Road
Suite 205B
Yardley, PA 19067
(215)918-3332, extension 101
EKolodny@AbuseAnalytics.com

Attorneys for Plaintiff



*Filed and Attested by the
Office of Judicial Records
22 DEC 2025 12:07 pm
GILLIAN*

| | | |
|---|---|---|
| Cayden Halligan, Individually and as Executrix of the Estate of Carl Joseph Holod | : : : : | PHILADELPHIA COUNTY COURT OF COMMON PLEAS |
| Plaintiff | : : : | Docket No. 250802066 |
| v. | : : | |
| Delaware Valley Veterans' Home; Commonwealth of Pennsylvania Department of Military and Veterans' Affairs; Commonwealth of Pennsylvania DMVA Bureau of Veterans' Homes; Commonwealth of Pennsylvania Office of the Attorney General | : : : : : : : : | |
| Defendants | : : | |

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

"You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help."

Philadelphia Bar Association
Lawyer Referral
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

"Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal."

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
(215) 451-6197

## COMPLAINT – CIVIL ACTION

Plaintiff, CAYDEN HALLIGAN, Individually, and as Executrix of the Estate of CARL JOSEPH HOLOD, by and through her undersigned attorney, Elliot Kolodny, Esquire hereby brings this action against Defendants, Delaware Valley Veterans' Home, Commonwealth of Pennsylvania Department of Military and Veterans' Affairs, Commonwealth of Pennsylvania DMVA Bureau of Veterans' Homes, Commonwealth of Pennsylvania Office of the Attorney General,  and in support thereof avers as follows:

### PARTIES

1.    Plaintiff, CAYDEN HALLIGAN is an adult citizen and resident of the Mount Laurel, New Jersey and is the named Executrix of THE ESTATE OF CARL JOSEPH HOLOD , Deceased, who died on July 15, 2024. A copy of the Letters Testamentary issued by the Register of Wills of Philadelphia County issued February 18, 2025, is attached hereto and marked as Exhibit "A".

2.    Upon information and belief, Plaintiff, CAYDEN HALLIGAN, 20311 Stevens Way, Mt. Laurel NJ daughter of the decedent and VERONICA VINGLESS, 48 Lakeview Drive, Southampton, PA, are both daughters of the decedent, and are the only heirs and/or potential beneficiaries of and to THE ESTATE OF CARL JOSEPH HOLOD, their Father.  They are all of the persons legally entitled to recover damages for the wrongful death of CARL JOSEPH HOLOD.

3.    Plaintiff is asserting a claim of professional liability against Defendants.

4.      At all times material hereto, Defendants Delaware Valley Veterans' Home, Commonwealth of Pennsylvania Department of Military and Veterans' Affairs, Commonwealth of Pennsylvania DMVA Bureau of Veterans' Homes, Commonwealth of Pennsylvania Office of the Attorney General (hereinafter "NURSING HOME" "DELAWARE VALLEY VETERANS HOME" or "DEFENDANTS") owned and or operated a skilled nursing facility at 2701 Southampton Road, Philadelphia, PA 19154 and, at all times material hereto operated, controlled, and conducted the business of a skilled nursing facility at that location.

5.      The NURSING HOME, at all times in question, consisted of entities whose formal legal structures are unknown but whom it is believed and therefore averred owned, operated, maintained, controlled, managed, financed  and in all ways operated the business of a skilled nursing facility at the above referenced location and elsewhere for their profit and gain.

6.      At all times relevant, the NURSING HOME, by and through its agents, apparent agents, servants and employees, including, Owners, Executivess, Nurses, Nurse Case Managers, Certified Nurse Assistants, Medical Assistants, and Medical/Physician Assistants and Physicians then employed by the NURSING HOME and whom provided and controlled all resident care services of the elderly and infirm residents at its location referenced above, which included, but was not limited to, the diagnosis, care and treatment of the residents' medical, custodial and psychosocial needs; providing adequate nursing supplies and durable medical equipment; accident investigation and prevention; communications with attending physician; determining and drafting policies and procedures; hiring, firing, training and supervision of employees.

7.      As more fully set forth below, at all times material hereto, the NURSING HOME by and through its agents, ostensible agents, servants and employees, failed to provide

necessary nursing services, personal care services, custodial care and supervision to elderly and

infirm residents at its facility including CARL JOSEPH HOLOD, including, but not limited to,

by deviating from accepted standards of practice in the areas of resident care; drafting and

enforcement of policies and procedures; proper fall prevention; providing proper wound

prevention and wound care; hiring, retaining and deployment of adequate staff; supervision of

employees; and, allocation of financial resources at the NURSING HOME.

8.    Plaintiff is asserting against the NURSING HOME claims of direct corporate and

vicarious professional liability by and through its agents, ostensible

agents, employees and/or servants who were then and there acting within the course and scope of

their agency, apparent agency and/or employment.

9.    At this time while Plaintiff is in possession of some treatment records received

from the NURSING HOME, he is as yet unaware of the specific identities of those persons who

acted or failed to act as the NURSING HOME's agents, and cannot therefore specifically

identify by name the agents or persons responsible and/or vicariously liable for the NURSING

HOME's conduct due to the negligence as detailed below.

10.    At all times material hereto, the NURSING HOME was acting by and through its

agents, ostensible agents, servants and employees, who failed to provide necessary nursing

services, personal care services, custodial care and supervision to elderly and infirm residents,

including CARL JOSEPH HOLOD, including but not limited to, by deviating from accepted

standards of practice in the areas of resident care; drafting and enforcement of policies and

procedures; providing proper wound prevention and care, hiring, retaining and

deployment of adequate staff; supervision of employees; and, allocation of financial resources

at the NURSING HOME.

Case ID: 250802066

11.    At this juncture, prior to the completion of discovery, while the NURSING

HOME clearly knows the identities of the persons acting or failing to act on their behalf, the

plaintiff is unaware of the specific identities of those persons who acted as the NURSING

HOME's agents as the charts contain illegible and handwritten signatures and, prior to the

completion of discovery, lack information as to the identities of the defendants' management

and supervisory personnel.  The identity of those individuals to the extent not known by the

NURSING HOME can be ascertained in the course of discovery.

12.    Accordingly, at this point Plaintiff cannot specifically identify by name the

agents, ostensible agents, servants and employees and are able only to describe, prior to the

completion of discovery, what said actions each of them performed or failed

to perform.  This  complaint alleges the actions or failures to act for which the

NURSING HOME is vicariously liable.


## VENUE AND JURISDICTION

13.    Venue and jurisdiction are proper in Philadelphia County because it is the place

where the NURSING HOME does business and the place where the harms to Plaintiff's

decedent occurred.

## JURY DEMAND

14.    Plaintiff, CAYDEN HALLIGAN, Individually, and as Executrix of the Estate

of CARL JOSEPH HOLOD, hereby demands a trial by jury of this action.


## FACTUAL ALLEGATIONS

Case ID: 250802066

15.     Plaintiff's decedent, CARL JOSEPH HOLOD, ("HOLOD" or "PLAINTIFF'S DECEDENT" or "RESIDENT") then 76 years of age, was admitted to the NURSING HOME on October 22,2022 due to a variety of medical conditions, which included, among other quadriplegia status post fracture C2-C5, status post C2-C5 and C6-T4 spinal decompression, instrumentation and fusion, tracheostomy status post respiratory insufficiency, neurogenic bladder with indwelling foley catheter, incontinence of bowel due to motor vehicle crash, muscle spasms, pain and other conditions and due to his diminished ability to care for himself and engage in the normal activities of daily living.

16. Upon admission Mr. HOLOD was documented as alert and oriented, cognitively intact and had only limited movement of his left hand with which he was able to operate a power wheelchair. MR. HOLOD was totally dependent on the nursing home's staff for activities of daily living including, but not limited to, bed mobility, transfers, bathing, dressing and eating.

17.     More specifically the NURSING HOME knew that MR. HOLOD had a medical history which made him a significant risk for the development of pressure ulcers. This includes, but is not limited to, 1- a history of very impaired mobility issues to the point he was non-ambulatory and required extensive assistance for bed mobility, transfers, hygiene and toilet use; 2-incontinence of bladder and bowel making his skin moist and reducing the skin's resistance to pressure; 3-increased risk for shear and friction injury; 4-chronic pain; and 5-the presence of an existing pressure injury among other conditions.

18.     Due to his underlying medical conditions and poor mobility, the NURSING HOME either knew or should have known that MR. HOLOD was at risk for the development of pressure injuries and, due to the problems previously mentioned, also further at risk for skin breakdown and/or pressure ulcer and/or pressure injuries. MR. HOLOD was at high risk for

pressure injuries due to his decreased mobility, pain, bowel incontinence, friction and shear, nutrition, prior history of healed pressure ulcers and age.

PAIN

19.  Despite this history an order for repositioning of MR.  HOLOD was not documented until January 5, 2024.

20.  MR. HOLOD suffered throughout his admission from painful muscle spasms and back pain that usually accompanies spinal cord injuries.  Pain can significantly diminish one's desire to be repositioned since, once finding a position of comfort, one is highly reluctant to change position and suffer pain during repositioning.

21.  Despite the fact that defendants' records note that MR. HOLOD was refusing repositioning  significant changes to his  pain management regimen were not even ordered until the ordering of  Clonzapem on February 13, 2023, and Tizanidine on February 15, 2024.

22.  Mr. HOLOD also had only one daily dosing of Duloxetine on December 6, 2023, despite the fact that for adults in order to treat muscle pain  the recommended dose is 60 mg once daily.

23.  Significantly, it was only after Mr. HOLOD's daughter and her wife insisted that MR. HOLOD receive appropriate pain management that steps were taken by defendants to control his pain.   Once defendants finally acted to appropriately manage MR. HOLOD's pain he cooperated with turning and repositioning.

BOWEL INCONTIENCE

24.  MR. HOLOD was incontinent of bowel and did not sense when he was incontinent. DEFENDANTS knew or should have known that stool can cause and aggravate skin irritation

causing and/or worsening pressure injury.   Therefore, his need for cleansing had to be anticipated and met by the staff.

## FRICTION AND SHEAR

25.  Owing to his need for extensive maximum assistance for bed mobility, MR. HOLOD was at risk for shearing injury and friction injury.

## NUTRITION

26.  MR. HOLOD exhibit signs and symptoms of malnutrition while at the NURSING HOME.   This included significant weight loss abnormal albumin and serum protein levels.

27.   MR. HOLOD was eventually diagnosed with protein calorie malnutrition yet he did not receive nutrition support until February 13, 2024.   He had a PEG inserted on that date.

28.  Insufficient nutrition is a significant contributor to the etiology and pathogenesis of pressure ulcers.

## HISTORY OF HEALED PRESSURE ULCERS

29.   MR. HOLOD had a history of healed pressure ulcers.  Specifically he had a small stage 2 pressure ulcer that healed.

30.  A history of pressure ulcers increases the likelihood of further skin breakdown.

## AGE

31.  Older age is a risk factor for pressure ulcer development.

32.  The care plan developed by the NURSING HOME defendants for MR. HOLOD failed to follow the required standard of care interventions for the prevention and treatment of MR. HOLOD in several ways, including but not limited to:

       A.  failing to properly schedule check and change program to address his bowel incontinence;

Case ID: 250802066

B. failing to include proper interventions for the prevention of shear and friction injuries  including turn sheets, log rolling of MR. HOLOD and keeping the head of the bed at 30 degrees or less to prevent sliding in bed;

C.  failing to properly limit time out of bed;

D.  failing to properly provide weight shifts every 15 minutes while MR. HOLOD was out of bed;

E.  failing to properly keep the head of chair tilted back to prevent sliding in the chair;

F.   failing to properly provide weight shifts and reposition MR. HOLOD while he is in a chair;

G.  failing to properly make certain that the chair is checked by therapy to maximize pressure relief;

H. failing to properly remove the mechanical lift pad from the chair after lifting MR. HOLOD in order to ensure that he receives the full benefit of the chair cushion;

I.  failing to properly develop an individualized positioning schedule to turn MR. HOLOD from back to unaffected side to alleviate as much pressure as possible;

J. failing to properly perform calorie counts.

33.  The defendants' records contain no evidence that these required standard of care interventions were planned and/or implemented for MR.  HOLOD.

## THE DEVELOPMENT OF MR. HOLOD'S PRESSURE WOUNDS

34.  On or about October 31, 2023, Defendants documented a new pressure ulcer on MR. HOLOD's left ischium measuring 2.2 x 1.5 cm.

Case ID: 250802066

35.  On November 1 ,2023, that wound had grown to 2.6 x 4 x0.1cm and was noted to be Stage 2 and a Right ischium stage 2 wound was documented at 2.2x2x0.1 cm.

36.  On December 13, the left ischium wound was a stage 3 measuring 6.4x4.8x0.9cm.

37.  As these wounds grew and developed MR. HOLOD complained of pain.

38.  Defendants' chart include a note on December 18, 2023 that MR. HOLOD was not properly positioned in his wheelchair causing his trunk to lean to the left thereby putting more pressure on his left ischial area.  His cushion was also noted to be overinflated and the right armrest was damaged.   These factors contributed to further pressure on MR. HOLOD's wound in violation of the applicable standard of care.

39.  By January 1, 2024 the left ischium wound was noted to have grown to 6.1x5x4.5cm.

40.  As the chart notes, MR. HOLOD's family asked that the staff call them any time MR. HOLOD refused care.   MR. HOLOD's family had provided him with a cell phone and when the family was called they would call MR. HOLOD who would then accept the care.

41.  At a January 24, 2024 visit to the Nazareth Hospital Wound Clinic, the physician noted that he could probe the wound on his left ischium down to the bone.  He was transferred to Virtua Health Hospital on January 25, 2024.  Exhibit "B" is a photograph taken at Virtua Health Hospital.

42.  On January 27, 2024, MR. HOLOD underwent surgical debridement of the stage 4 pressure ulcer.  An abscess on his right scapula was also treated.

43.  X-ray of his left buttock confirmed osteomyelitis.

44. . MR. HOLOD was readmitted to the NURSING HOME February 13, 2024.  His wound was assessed as 6.5x4x3cm with tunnelling noted at 1,7 and 11 o'clock.

45. On February 13, 2024, MR. HOLOD's daughter and her wife hired nursing assistants to sit in his room 24 hours per day to report to them the care that he was receiving . Those aides were not to assist with care. This was done to assure that MR. HOLOD received care consistent with the standard of care. Interestingly, after, this was instituted MR. HOLOD's record documents that he received every 2-hour turning and repositioning with which he was compliant. His pain regimen was also adjusted.

<u>VIOLALTIONS OF THE STANDARD OF CARE AND REGULATIONS</u>

46. At all times material hereto, MR. HOLOD was totally dependent on the staff at the nursing home for all activities of daily living. Based on his high risk for development for pressure ulcers described more fully above the staff and defendants' NURSING HOME was required to plan and implement all of the standard of care interventions for the prevention and treatment of pressure ulcers.

47. As noted above multiple standard of care interventions were not properly planned for nor does the chart evidence that those interventions were implemented.

48. It was not until after intense involvement by his family that MR. HOLOD received the interventions required by the standard and that MR. HOLOD deserved.

49. It was only through the intensive actions by his family that MR. HOLOD actual began to experience some improvement in his pressure wounds. Thus, demonstrating that the horrific wounds he suffered could have been avoided had defendants done their job and complied with the standards of care and applicable regulations.

50. As a direct result of the NURSING HOME's failure to properly treat, plan, diagnose, prevent, detect and guard against MR. HOLOD's risk he experienced numerous and unnecessary pressure injuries at the NURSING HOME.

51.  The care MR. HOLOD received from the defendants violated the applicable standards of care and various regulations, including, but not limited to:

 A.  failing to properly develop a comprehensive care plan;

 B.  failing to properly implement a comprehensive care plan;

 C.  failing to properly develop and individualized care plan;

 D.  failing to properly document all care plans;

 E.  failing to comply with 42 CFR 483.21(b)(3);

 F.  violating F658;

 G.  failing to comply with 42 CFR 483.21(b);

 H.  violating F656;

 I.  failing to properly develop and implement a comprehensive care plan that includes measurable objectives and time frames to meet MR. HOLOD's medical, nursing, mental and psychosocial needs;

 J.  violating 42 CFR 483.10(c)(2);

 K.  violating 42 CFR 483.10(c)(3);

 L.  failing to properly assess MR. HOLOD and his needs;

 M. failing to develop and implement a comprehensive care plan to attain MR. HOLOD's highest practicable physical, mental and psycho-social well being;

 N.  violating 42 CFR 483.24;

 O.  violating 42 CFR 483.25;

 P. violating 42 CFR 483.40;

 Q. violating 42 CFR 483.24;

Case ID: 250802066

R. failing to properly turn and reposition;

S. failing to properly transfer MR. HOLOD;

T. failing to properly reduce pressure on MR. HOLOD;

U. failing to properly position MR. HOLOD in his wheelchair;

V. failing to properly position MR. HOLOD in bed;

W. failing to properly position MR. HOLOD while sitting;

X. failing to properly maintain equipment used;

Y. failing to properly clean and bathe MR. HOLOD;

Z. failing to properly document and address MR. HOLOD's pain;

AA. failing to properly manage any refusal of treatment by MR. HOLOD;

BB. failing to properly limit MR. HOLOD's time out of bed;

CC. failing to properly provide a safe and decent living environment;

DD. allowing the development of pressure ulcers;

EE. allowing the worsening of pressure ulcers;

FF. failing to properly promote healing;

GG. failing to properly prevent infection;

HH. failing to properly provide necessary treatment and services;

II. failing to properly monitor MR. HOLOD's condition;

JJ. failing to properly revise care plans and intervention when MR. HOLOD's condition changed or failed to change;

KK. failing to properly manage pain;

LL violating 42 CFR 483(k);

MM. violating F697;

Case ID: 250802066

NN. violating F684;

OO. failing to treat MR. HOLOD with respect and dignity;

PP. failing to have sufficient nursing staff with appropriate competencies and skill

sets;

QQ. violating 42 CFR 483.35;

RR. violating F726;

SS. failing to adhere to the scope and standards of nursing practice were documented by the American Nurses Association in 1991. The standards include the following:
Standard #1: Assessment: The nurse collects comprehensive data pertinent to the patient's health. The assessment is documented in a retrievable format and is an ongoing systematic process.
Standard #2: Diagnosis: The nurse analyzes the assessment data to determine the diagnosis. The nursing diagnosis is derived from the assessment data.
Standard #3: Outcomes identification: The nurse identified expected outcomes for a plan individualized to the patient. The outcomes provide for continuity of care for the patient.
Standard #4: Planning: the nurse develops a plan that prescribes strategies and alternative to attain the expected outcomes. The plan includes current statutes, rules and regulations and standards.
Standard #5: Implementation: The nurse implements the identified plan. The implementation utilizes evidence-based interventions and treatments specific to the identified diagnosis.
Standard #6: Evaluation: The nurse evaluates progress toward attainment of outcomes. The nurse documents the results of the evaluation. The nurse uses ongoing assessment data to revise the assessment, diagnosis, outcomes identification, planning and implementation as needed;

TT. concealing MR. HOLOD's Pressure Injuries;

UU. failing to transfer MR. HOLOD to the hospital for emergency care in a

timely fashion;

VV.    failing to advise MR. HOLOD's family members of his decline in

health in a timely manner; and,

WW.   Failing to properly supervise medical care rendered to MR. HOLOD;

52. Federal regulations and standards for skilled nursing facilities were established in 1987 with revisions made periodically since that time. The regulations are contained in 42CFR Part 483.

53. The NURSING HOME is required to follow the regulations contained in 42 CFR Part 483.

54. The regulations contained in 42 CFR Part 483 are evidence of the applicable standards of care in this matter.

55. The failure to plan and implement standard of care interventions for the prevention and treatment of pressure ulcers is also a failure to adhere to federal regulation under F 686, 483.25, Pressure Ulcers: Based on the comprehensive assessment of a resident, the facility must ensure that (i) A resident receives care, consistent with professional standards of practice to prevent pressure ulcers and does not develop pressure ulcers unless the individual's condition demonstrates that they were unavoidable; and (ii) A resident with pressure ulcers receives necessary treatment and services, consistent with professional standards of practice, to promote healing, prevent infection and prevent new ulcers from developing. These failures are violative of the applicable standards of care.

56. These are also violations of federal regulations under F684, 483.25 Quality of Care. Quality of Care is a fundamental principle that applies to all care and services provided to facility residents. Under 483.10(a), a facility must treat each resident with respect and dignity, and care for each resident in a manner and in an environment that promotes maintenance or enhancement of his/her quality of life, recognizing each resident's individuality. The nursing home "must ensure

that residents receive treatment and care in accordance with professional standards of practice." These are also violations of the applicable standards of care.

57.  Additionally, under federal regulation, under F607, 483.12(b)(1), each resident has the right to be free from abuse, neglect or misappropriation of property. For purposes of this regulation, the Guidelines state, "neglect means failure to provide goods and services necessary to avoid physical pain, mental anguish or mental illness (423CFR 488.301). This is also the applicable standard of care.

58.  It was neglectful and violative of the applicable standards of care for the NURSING HOME to fail to provide standard of care interventions for the prevention and treatment of pressure ulcers for MR. HOLOD.  It was neglectful of the staff of the NURSING HOME to fail to provide necessary daily hygiene to MR. HOLOD.

59.  As a result of these failures, MR. HOLOD experienced unnecessary pain and suffering from an infected pressure ulcer and from infected extensive pressure ulcers and hastening his death.


## COUNT ONE

## <u>SURVIVAL ACTION – MEDICAL NEGLIGENCE</u>


### <u>Plaintiff v. Defendants (Direct Corporate and Vicarious Liability)</u>


60.     Plaintiff incorporates herein by reference all of the foregoing paragraphs as though fully set forth below.

Case ID: 250802066

61.    The NURSING HOME had a duty and responsibility to MR. HOLOD as a resident of its facility to furnish appropriate and competent care and an obligation to employ competent, qualified staff as to ensure the proper treatment for individuals with medical problems such as those presented by him.

62.    Plaintiff brings this survival action pursuant to 42 Pa.C.S. §8302 on behalf of THE ESTATE OF CARL JOSEPH HOLOD.

65.    The injuries described above and his death was caused by the negligence and carelessness rendered to him by the DEFENDANTS.

66.    The aforesaid injuries and damages and eventual death sustained by MR. HOLOD were caused as a direct and proximate result of the negligence, carelessness and other liability-producing conduct of NURSING HOME, as set forth more fully above.

67.    The DEFENDANTS affirmatively chose to operate their facility so as to minimize costs at the expense of the care required to be provided to their residents including MR. HOLOD and in their effort to do so the NURSING HOME negligently, intentionally, wantonly, and recklessly mismanaged or reduced staffing levels below the level necessary to provide adequate care and supervision of its residents, including MR. HOLOD.

68.    The NURSING HOME knew or should have known its understaffing created recklessly high resident to staff ratios.

69.    As a direct and proximate result of the negligence and carelessness of the Defendant, the MR. HOLOD:

Case ID: 250802066

a.      Suffered serious, painful bodily injuries, great physical pain and mental

anguish, severe and substantial emotional distress, loss of the capacity for the

enjoyment of life and the hastening of his death;

b.      Was required to undergo medical treatment and to incur medical costs and

expenses in order to alleviate his injuries, pain and suffering; and

c.      Was further precluded from engaging in normal activities and pursuits.

70.     As a result of the death of MR. HOLOD his estate has been deprived of the

economic value of his life expectancy and Plaintiff claims damages for the pecuniary loss caused

by his death.

71.     Plaintiff claims on behalf of the Estate of CARL JOSEPH HOLOD damages for

the conscious pain and suffering and mental anguish undergone by MR. HOLOD from the

date of his admission to the NURSING HOME and subsequent days and months until his death.

72.     As a result of the untimely death MR. HOLOD Plaintiff claims of the Defendant

the additional sum for the psychic value of the expectancy and enjoyment of the life

of MR. HOLOD which was terminated by the reason of his death.

73.     As a result of the untimely death of MR. HOLOD Plaintiff claims

damages for the expenses incurred by MR. HOLOD for medical

attention and treatment and for funeral and other expense incurred herewith.

74.     Plaintiff claims damages for the loss suffered by MR. HOLOD of the prospective

happiness and enjoyment and pleasure of life which MR. HOLOD would have had during

the remainder of his natural life.

WHEREFORE, Plaintiff, Cayden Halligan, *Individually and as EXECUTRIX of* THE

ESTATE OF CARL JOSEPH HOLOD, Deceased, hereby demands judgment in her favor and

Case ID: 250802066

against Defendants in an amount in excess of the arbitration limit, plus punitive damages,

together with all costs, interest and damages legally appropriate.

## COUNT TWO

## WRONGFUL DEATH – MEDICAL NEGLIGENCE

### Plaintiff v. Defendants (Direct Corporate and Vicarious Liability)

75.    Plaintiff incorporates herein by reference all of the foregoing paragraphs as
though fully set forth below.

76.    Plaintiff as daughter and EXECUTRIX of the Estate of CARL JOSEPH
HOLOD brings this action on behalf of the survivors CARL JOSEPH HOLOD under and by
virtue of the Pennsylvania Wrongful Death Act, 42 Pa.C.S.A. § 8301.

77.    CARL JOSEPH HOLOD did not bring any action for the claims raised in this
action during his lifetime.

78.    Plaintiff claims damages for pecuniary loss suffered by decedent's survivors by
reason of the death of CARL JOSEPH HOLOD as well as reimbursement for medical bills,
funeral and internment expenses, and administration expenses incurred herewith.

79.    As a result of the wrongful death of CARL JOSEPH HOLOD the survivors have
been deprived of the guidance, love, tutelage, companionship, support, comfort, and consortium
which they would have received from CARL JOSEPH HOLOD for the remainder of his natural
life.

WHEREFORE, Plaintiff, Cayden Halligan, *Individually and as EXECUTRIX of*

Case ID: 250802066

THE ESTATE OF CARL JOSEPH HOLOD, Deceased, hereby demands judgment in her favor and against Defendants in an amount in excess of the arbitration limit, plus punitive damages, together with all costs, interest and damages legally appropriate.

COUNT III:

VIOLATION OF CIVIL RIGHTS ENFORCEABLE PURSUANT TO 42 U.S.C. § 1983 – Cruel and Unusual Punishment

80.  The averments of the previous paragraphs are incorporated by reference as if fully set forth.

81. Section 1983 provides that: "every person who, under color of [law] of any State. . . subjects, or causes to be subjected, any [person] to the deprivation of any rights. . . secured by the Constitution and laws, shall be liable to the party injured in an action at law. . ." 42 U.S.C. § 1983.

82. Actions against state officials seeking redress for violations of constitutional rights may be brought under 42 U.S.C. § 1983.

83. The Plaintiff's Decedent was a "person" within the meaning of 42 U.S.C. § 1983.

84. Under the Eighth Amendment to the United States Constitution, made applicable to the states pursuant to the Fourteenth Amendment, government agencies are prohibited from subjecting citizens to cruel and unusual punishment. Actions of government officials demonstrating deliberate indifference to the serious medical needs of U.S. citizens represents cruel and unusual punishment, as established in *Estelle v. Gamble,* 429 U.S. 97 (1976).

85. Residents of skilled nursing facilities, specifically including Plaintiffs' Decedent herein, rely on the facility, and therefore on the facility's administrators, to attend

Case ID: 250802066

to their medical needs. Plaintiffs' Decedent herein, also relied on the facility and the facility's administrators to attend to their medical needs.

WHEREFORE, Plaintiff, Cayden Halligan, *Individually and as EXECUTRIX of* THE ESTATE OF CARL JOSEPH HOLOD, Deceased, hereby demands judgment in her favor and against Defendants in an amount in excess of the arbitration limit, plus punitive damages, together with all costs, interest and damages legally appropriate.

COUNT IV:

DEPRAVATION OF CIVIL RIGHTS PROTECTED UNDER FEDERAL NURSING HOME REFORM ACT ("FNHRA")

86. The averments of the previous paragraphs are incorporated by reference as if fully set forth.

87. Defendants are bound generally by the 1987 Omnibus Budget Reconciliation Act ("OBRA") and the Federal Nursing Home Reform Act ("FNHRA"), which is contained within the 1987 OBRA. *See:* 42 U.S.C. § 1396r; 42 U.S.C. § 1396a(w) (as incorporated by 42 U.S.C. § 1396(r).) Defendants are also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, *et seq.*, which served to define specific statutory rights set forth in the above-mentioned statutes.

88. The specific detailed regulatory provisions as well as the statutes in question create rights for Plaintiffs' Decedent, which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

WHEREFORE, Plaintiff, Cayden Halligan, *Individually and as EXECUTRIX of*

Case ID: 250802066

THE ESTATE OF CARL JOSEPH HOLOD, Deceased, hereby demands judgment in her favor

and against Defendants in an amount in excess of the arbitration limit, plus punitive damages,

together with all costs, interest and damages legally appropriate.


COHEN KOLODNY ABUSE ANALYTICS


By:_____

ELLIOT KOLODNY, ESQUIRE

Case ID: 250802066

# EXHIBIT A

Case ID: 250802066

# Office of the Register of Wills of Philadelphia County, Pennsylvania

File #: W0685-2025

Commonwealth of Pennsylvania

County of Philadelphia

} ss.

I, **JOHN P. SABATINA, ESQ.** , Register for the Probate of Wills and Granting Letters of Administration in and for the County of Philadelphia, in the Commonwealth of Pennsylvania

DO HEREBY CERTIFY AND MAKE KNOWN That on the ___**18th**___ day of **February**

in the year of our Lord ___**2025**___        **LETTERS TESTAMENTARY**

on the Estate of__ **CARL JOSEPH HOLOD**

(AKA: CARL J. HOLOD)

Deceased, were granted unto __**CAYDEN HALLIGAN**

having first been qualified well and truly to administer the same. And I further certify that no revocation of said Letters appears of record.

Date of death _____ **7/15/2024**

Given under my hand and seal of office, this__**18th**___ day of__**February**_____, 20 **25**

_Deputy Register_

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

10-14 (Rev. 3/08)

*Will No.*

**W0685-2025**



# LETTERS TESTAMENTARY

### REGISTER'S OFFICE
### PHILADELPHIA COUNTY, PA

#### Certificate of Grant of Letters

ESTATE OF.....**CARL JOSEPH HOLOD**..................
**AKA: CARL J. HOLOD**
.......................................................................................
.......................................................................................
.......................................................................................

Social Security No. .......**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**.....................

WHEREAS, on the ...**18th**......... day of ....**February**.............................................. **2025**.., the last will of **CARL JOSEPH HOLOD**................................................**Text**................late of..............................

**2701 SOUTHAMPTON ROAD, PHILADELPHIA, PA 19154** who died on the ....**15th**......day of.....**July**.......................

....**2024**......, was proved and admitted to probate, and

WHEREAS, a true copy of the will as probated in annexed hereto.

THEREFORE, I, **JOHN P. SABATINA, ESQ**, Register for the Probate of Wills and Grant of Letters Testamentary and of Administration, in and for the County of Philadelphia, in the Commonwealth of Pennsylvania, hereby certify that I have granted Letters ....**Testamentary**..................................................................................

.......................................to.............................................................................

**CAYDEN HALLIGAN**
.......................................................................................................................

who ha.**s**....duly qualified as ..**Executrix**.................................................................... who ha.**s**.... agreed to administer the estate according to law, all of which fully appear of record in the Office of the Register of Wills of Philadelphia County, Pennsylvania.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seal of my office, at Philadelphia, the ..**18th**.....day of..**February**...................................... **2025**..........

............................................
*Deputy Register*

10-38 (Rev. 10/99)

Case ID: 250802066

# EXHIBIT

# B

Case ID: 250802066



Holod, Carl J
MRN: 6197675, DOB: 5/19/1946, Sex: M
Adm: 1/25/2024, IP ADM DATE 1/25/2024, D/C:
2/13/2024

**01/25/2024 - Admission (Discharged) in Voorhees 5A Med Surg/Surgical Tele Unit (continued)**

Documents (group 2 of 5) (continued)



VERIFICATION

I, CAYDEN HALLIGAN, verify that the facts set forth in the foregoing pleading are true and correct to the best of my knowledge, information and belief, and that false statements made herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsifications to authorities.


Date: 12/21/2025

CAYDEN HALLIGAN

23

Case ID: 250802066

## CERTIFICATE OF SERVICE

I hereby certify that I forwarded a true and correct copy of the foregoing to the following as

indicated:

       <u>VIA EMAIL</u>

Darryl J. Liguori, Assistant Counsel
Pennsylvania Department of Military and Veterans Affairs
Office of Chief Counsel
Fort Indiantown Gap, Bldg. 7-36
Annville, PA 17003
dliguori@pa.gov
Attorneys for Delaware Valley Veterans Home, Pennsylvania Dept. of Military and Veterans
Affairs, DMVA Bureau of Veterans Homes, and Commonwealth of Pennsylvania

December 22, 2025

                     Elliot Kolodny